IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES CHENAULT<br>#00341511, | *<br>*<br>* | |
| Plaintiff, | * | |
| v. | * | No. 3:24-cv-00179-JJV |
| | * | |
| JACOB WHITE, Lieutenant,<br>Greene County Detention Center, *et. al,* | *<br>* | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**[1]

**I.     INTRODUCTION**

James Chenault ("Plaintiff") has filed a *pro se* Amended Complaint, pursuant to 42 U.S.C. § 1983, alleging that on August 25, 2024, he was beaten by three individuals at the Greene County Detention Center ("GCDC") while he was a federal detainee being held at that facility. (Doc. 6.) Plaintiff's remaining claims are that Defendants Lieutenant Jacob White and Sergeant Alicia Albretch failed to protect him from that attack, and Defendant Albretch denied him adequate medical care for his injuries.[2]

Specifically, Plaintiff says that, although the attack was a surprise, Lieutenant White and Sergeant Albretch violated his constitutional rights by failing to train their subordinates that violent state inmates, such as one of his attackers, should not be housed with federal detainees. And he claims that despite knowing the emergency call button in the pod where the beating occurred was broken, Lieutenant White and Sergeant Albretch failed to have a jailer supervise the pod through

---

[1] On March 20, 2025, the parties consented to proceed before me. (Doc. 34.)

[2] All other claims and Defendants have been previously dismissed without prejudice. (Doc. 16.)

1

security cameras. Finally, Plaintiff says after he returned from the hospital on August 25, 2024, Sergeant Albretch sent him back to the pod without a working emergency call button, instead of putting him in a medical observation cell as recommended by the nurse. As a result, Plaintiff claims he failed to receive urgent medical care the following day.

Defendants have filed a Motion for Summary Judgment arguing the claims against them should be dismissed without prejudice because Plaintiff failed to exhaust his available administrative remedies. (Docs. 35-37.) Plaintiff has filed a Response. (Doc. 39.) Defendants have not filed a Reply, and the time to do so has passed. *See* Local Rule 7.2(b). After careful consideration and for the following reasons, the Motion will be granted, Plaintiff's claims will be dismissed without prejudice, and this case will be closed.

## II.    SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

**III.    DISCUSSION**

    **A.    Exhaustion Requirement**

The Prison Litigation Reform Act ("PLRA") provides, in part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006).

The PLRA requires inmates to fully and properly exhaust their administrative remedies as to each claim in the complaint.  *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).  Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218.  Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility.  *Id.*  The only exception is if administrative remedies are unavailable.  42 U.S.C. § 1997e(a) (prisoners are only required to exhaust "available" administrative remedies).  Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a simple dead end;" (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. 632, 642 (2016); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

B.   **GCDC's Grievance Procedure**

The GCDC's grievance procedure, which is available on the jail's kiosk, says detainees must file grievances either electronically or by giving a grievance form to any staff member within forty-eight hours of the challenged event. (Doc. 37-5 at 2-3.) The grievance must include the "name of the person(s) who allegedly violated the detainee's rights, or if the name is not known, it should describe the person in detail." (*Id*. at 3) (emphasis added.) Additionally, the grievance must include the date of the challenged incident, the names of any witnesses, and the right the detainee believes was violated. (*Id*.) A response must be sent to the detainee within "five (5) days unless circumstances do not permit a response in this timeframe and then the response should be given as soon as possible." (*Id*.)(emphasis added.) A detainee who is unsatisfied with the response, must appeal to the lieutenant within forty-eight hours. If the detainee is still unsatisfied, he or she must file a second appeal to the captain within forty-eight hours, and the captain's decision concludes the process. Finally, the policy says that if the Plaintiff fails to timely file a grievance, or either of the appeals, then his or her claim is "abandoned." (*Id*. at 2-3.)

C.   **Plaintiff's Grievances**

The parties agree Plaintiff filed three grievances about the August 25, 2024 attack. (Doc. 37-3, Doc. 39.) First, after he returned from the hospital on August 25, 2024, Plaintiff filed a grievance saying:

> Today @ approximately 130 pm in pod S3 Greene county, I was brutally attacked beyond recognition by 3 inmates and rushed to the paragould emergency room. One of the inmates was a state inmate being housed w/ us federal inmates who attacked me first (from behind, while sitting at a table) chipped my bottom tooth making it very sensitive to touch and liquid. Im in bad pain like a 10 out of 10 and can't close my mouth properly due to both of my lips being swoll so bad. These inmates jumped me for no apparent reason and need to be held accountable for there actions ERIC GRAY (state inmate) should have never been housed with federal and he's got with paris scott and branden sims and viciously attacked me causing me serious bodily harm. I possibly need to see a dentist to fix my teeth bc they feel pushed

> back. My face and head looks like a pumpkin and hurts from being stomped and beating. . . I was informed to document incase I dnt wake up. . .I'd also like to press charges and file a lawsuit due to my safety being violated and physically harmed while I crawled to the door banging on it for security as they continued to jump me until the door opened, I've never experienced nothing of his nature in my entire life.

(Doc. 37-3 at 1.) On October 18, 2024, which was fifty-four days later, a jail official responded, "This incident has been handled and the request is being closed." (*Id*.)

> On September 6, 2024, Plaintiff filed a second grievance saying:
>
> On 8-25-24 I was viciously attack by 3 inmates in S3. . . I've wrote a grievance hrs after it happened. I could have died and was rushed to ER. No ones even opened or answered my previous grievance. . .Im in pain and was hurt and beaten beyond recognition. I'm a federal inmate that was jumped by state and federal inmates. I've already have an open case on this county and dnt know if this attack adds onto that case or should I sue the shift supervision or inmates involved. I do know that this situation that has caused me serious bodily harm is being kept too too quite. My teeth were chipped and I have yet to see a dentist. My injuries from the brake checking incident w/ deputy S. Williams only gotten worse due to these group of inmates brutally attacking me. Could someone in administration plz acknowledge my pain and suffering and explain to me what steps I should take next. Also provide me w/proper names of all involved.

(*Id*. at 3.) On September 17, 2024, which was also eleven days later, a jail official responded "There are proper steps to all your request" and "closed" the grievance. (*Id*.)

> Finally, on September 9, 2024, Plaintiff filed a third grievance saying:
>
> August 25th I was viciously attacked by 3 inmates . .B4 they attacked me I over heard one of them (STATE I/M ERIC GRAY) state "I'am going to steal that niggas shit!" . . I went in my in the cell bc he was my cellmate and pressed the emergency button to alert security. No one answered me so I went and sat down @ a table in the dayroom, no sooner than I sat down these 3 inmates brutally attacked me into a concussion . . . punching and kicking me as I tried to crawled to the door for help . . . I was rushed to ER from beating physically beaten beyond recognition. Before I was transported on the ambulance I informed the officers that these inmates had threatened to steal my property. Once I got back to my property, my Tshirt, boxers, headphones, food & property was missing, which I informed the officers again, after it was stolen. They checked (state) inmate GRAY's property noticing my items but never return any of it thus far. . .Inmate Eric Gray was my cellmate and also the first one to attack me after threatening to take my property . . . No one taking this serious.

(*Id.* at 5.)  On September 17, 2024, which was eight days later, a jail official responded "Mr. Chenault, we are working on this" and "closed" the grievance.  (*Id.*)

Defendants argue Plaintiff failed to properly exhaust his administrative remedies because he did not file a first or second appeal as required by the GCDC's grievance policy.  However, in his verified Amended Complaint[3] and Response to the Motion for Summary Judgment, Plaintiff says he was transferred to another facility on September 12 or 15, 2024, which was <u>before</u> the initial responses were entered and his grievances closed on September 17 and October 18, 2024.  (Doc. 6 at 9; Doc. 39 at 1.)  Defendants have not refuted that assertion.  And they have not explained how Plaintiff could have known his grievances had been denied and closed after his departure, or how Plaintiff could have possibly appealed while he was in another facility.  The fact that GCDC officials "closed" these grievances on the same day that they entered their initial responses suggests that there was no such procedure.  And I could not find anything in the GCDC's handbook about appealing a grievance after leaving the jail.  Finally, Defendants have not explained what "circumstance," warranted their initial responses to be entered more than five days after Plaintiff filed his grievances, as required by the GCDC's grievance policy, and left the jail.  Accordingly, I find Defendants' first argument unconvincing.

Defendants also say Plaintiff failed to properly exhaust his administrative remedies because the grievances did not specifically name them or "if the name is not known" "describe" them "in detail," as required by the GCDC's grievance policy.  I agree.  Clearly, none of the grievances named Sergeant Albrecht or provided any details alerting jail officials Plaintiff's claim that she denied him constitutionally adequate medical care by returning him to the pod instead of putting

---

[3] *See Presson v. Reed*, 65 F.4th 357, n. 2 (8th Cir. 2023) (a verified complaint signed under penalty of perjury is the equivalent of an affidavit for summary judgment purposes).

him in a medical observation cell. Thus, that claim is clearly unexhausted. *See Muhammad v. Mayfield*, 933 F.3d 993, 1003 (8th Cir. 2019) (improper exhaustion when the issues raised during the administrative process was a "decidedly different issue" than the ones raised in the complaint); *Townsend v. Murphy*, 898 F.3d 780, 784 (8th Cir. 2018) (improper exhaustion when the prisoner did not specifically name a defendant in his grievance as required by the prison's grievance policy); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (improper exhaustion when the prison "was not asked to evaluate the conduct" of the defendant "or the distinct § 1983 claims first asserted" in the lawsuit).

The failure to protect claims against Lieutenant White and Sergeant Albretch are a closer call. Again, it is clear Plaintiff did not name them in any of his grievances. Thus, the issue is whether he provided sufficient details to determine their identities. I conclude he did not for the following reasons. In his August 25 and September 6, 2024, grievances, Plaintiff said one of his attackers was a state inmate who should not have been housed with federal detainees, which is a claim he raises in this lawsuit. But Plaintiff did not say that decision was based on inadequate training, as he does in his Amended Complaint, or otherwise provide any descriptive details suggesting that housing decision was the fault of Lieutenant White or Sergeant Albrecht. Similarly, in his September 9, 2024, grievance Plaintiff said he pressed the emergency button to alert security, but no one answered. But Plaintiff did not allege, as he does in the Amended Complaint, that Lieutenant White or Sergeant Albrecht knew that button was not working yet failed to provide video surveillance of the pod. Nor did Plaintiff otherwise provide any descriptive details alerting jail officials that he was claiming those two Defendants were somehow at fault for the broken button or insufficient visual supervision. Finally, I note that in his September 6, 2024, grievance Plaintiff asked "administration" to "explain to me what steps I should take next" and to

provide him with the "proper names of the individuals involved." However, the GCDC's grievance policy, which was undisputedly available to detainees on the kiosk, says in clear and unambiguous language that the grievance must provide the names of the "person(s) who allegedly violated the detainee's rights, or if the name is not known, it should describe the person in detail." Plaintiff did not comply with those clear instructions by providing Defendants' names or describing them in sufficient detail such that jail officials would have been aware of the claims he is attempting to raise against them, for the first time in this lawsuit. Accordingly, I conclude Defendants are entitled to summary judgment because Plaintiff failed to properly exhaust his available administrative remedies against them. *See Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process. The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 89 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.   CONCLUSION

IT IS, THEREFORE, ORDERED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 35) is GRANTED, and Plaintiff's failure to protect and inadequate medical care claims against Defendants White and Albrecht are DISMISSED without prejudice.

2. It is certified, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal would not be taken in good faith.

Dated this 19th day of May 2025.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE